On behalf of the Apollo, Mr. Robert Acevedo. On behalf of the Apollo, Mr. Timothy Shelton. Good afternoon. Presiding Justice Zinov was unable to be here due to circumstances beyond her control, so she has informed us that she will listen to the audio recording of this oral argument. So with that, Mr. Acevedo, you may proceed. Good afternoon, Your Honors. May it please the Court, Counsel. My name is Robert Acevedo. I represent Justin and Jamie Souza. We are asking Your Honors to reverse the law enforcement rulings and remand this matter back to the trial court for further proceedings. We believe the trial court erred in holding that Paragraph 12 of the residential real estate contract that my clients entered into did not apply, erred in holding that that paragraph applied to these facts and circumstances. Furthermore, we believe that the trial court erred in holding that Justin and Jamie did not have any other options other than to proceed with the contract at closing. Now, this case arises, as I previously mentioned, out of a residential real estate contract wherein Justin and Jamie entered into the event owners of record to purchase a residential single family home. Now, it's undisputed, and I've argued as such at the lower court and on my brief, that Justin and Jamie entered into the contract without the aid or services of an attorney. Furthermore, it's undisputed that the defendants in this case were retained by my clients more than five days after the attorney review period, which the trial court relied on Paragraph 12. Do you see this as a 615 or 619 motion? I know it was filed as a 619 motion. The initial complaint was filed as a 615, and it then turned into a 619. The 619, it's my understanding, Your Honor, that they were relying on the courts prior ruling, and that's what the second one was on. That was my understanding. So the first one was a 615 motion? The first one was a 615. That attacked the sufficiency of the complaint because it attached the contract to it. Correct. Yeah. And then after the court's initial ruling, they then relied on the court's first ruling, amongst other things, but primarily the court's first ruling to make it a 619 motion, wherein on the court's first ruling the trial judge relied on Paragraph 12 mainly of the residential contract, the attorney five-year review period, to say that if they had any options to walk away from the contract, it's only those options that were available to them under Paragraph 12. And I know you talk about Paragraphs 15 and 16 in your brief. Paragraph 15 talks about the current use and enjoyment of the property. Yes, Your Honor. If you have an easement that actually interferes with the current use and enjoyment of the property, what's the remedy? Do you then go to 16? I mean, is that then an unpermitted exception that kicks in 16, Paragraph 16? It seems like 15 just kind of stands by itself and it says, you know, they have to give good title. And, you know, it can be subject to easements as long as the easement doesn't interfere with the current use and enjoyment of the property. If there is an easement that does interfere with the current use and enjoyment of the property, what happens? I think that based on the contract, my clients would then have had the option of voiding the contract and not going further with it. Under 15 standing alone? Yes. Under 16? Under 15 standing alone because it's an exception. The contract says that the Paragraph 15 rather states they have to provide good marginal title subject to only the following. Now, easements are okay. However, as Your Honor pointed out, if it's an easement that interferes with its use and enjoyment, then it's no longer a permitted exception. Then it's unpermitted under 16. Then it's unpermitted under 16, correct. That's what I'm getting at. I mean, 15 doesn't really stand alone. 15, if there is an exception under 15, then, you know, again, an easement that does interfere with the current use and enjoyment, then doesn't that in essence become an unpermitted exception of title? And then 16 kicks in with the remedies in 16 where you could, you know, seek insurance on it, you know, all those remedies in 16. You could then, I mean, that's one way of, I suppose, one way of looking at it is that 15 in itself could potentially be sufficient to avoid the contract. Or another way of looking at it, as Your Honors have, is it automatically kicks in Paragraph 16 into play and now makes this easement, which interferes with its use and enjoyment, an unpermitted exception. And as part of Paragraph 16, the title, now it becomes where if the seller cannot cure the defect or the easement, remove it, or have the title company insure against it, my clients, I think the paragraph states, may then choose to take the property as is. And as I pointed out in my brief, may is not shall. And as Your Honors know, shall is almost construed as you must take it. May makes it, it appears that they have an option of whether or not to take it. And if they do, they can deduct the value of that encumbrance. That would have been an option as well. Right. One of the things that I was going to argue is that had they known about it, about the easement on the day of the closing, and one of their options that they could have chosen, first of all, if it wasn't permitted, and they discussed it amongst themselves at closing that it was an unpermitted exception or it was an easement that interfered with the use and enjoyment of the property, then my clients could have had multiple options at that point. One was to potentially void the contract. Another one could have been they could avoid the contract and just left the sellers with the earnest money and walked away from it. Another option that they did not have because of the defendant's actions, they could not attempt to negotiate with the sellers a better price because of this easement. Because if you were to look, and I know it's not part of, as an exhibit to my brief, but if you were to look at the easement on Schedule B, which is part of the title commitment package, now this is the one where the title insurance says, okay, you're taking title, but you're taking title subject to this. Where it references the 60-foot easement that was granted to ComEd, it says that ComEd has the right to install power lines, poles, anything they deem on that 60-foot easement. Now, we now know, two and a half years later approximately, ComEd has, in fact, installed some power line poles in the backyard. And it is our understanding, although at this point, obviously, it hasn't gone far enough where we can start to depose, it's our understanding that ComEd's intentions are to install these steel beams up there. Tell me, I don't know that it's all that relevant, but just for my, painting a picture in my head, if you will, this is a residence, of course, how big was the lot? The lot, I think, was, give or take some square footage, it's about two acres. It's about two acres. Now, the backyard, just so you have a rough idea of where the 60-foot easement lies, now, it's on the southwesterly part of the property. Keep in mind that they were, in the backyard, there were pine trees, and there still are some pine trees, but there were pine trees back here that ComEd had to cut down roughly 10, 12 pine trees to make place for the power lines that they've now installed. Furthermore, another thing you should keep in mind is that there is, as part of the purchase of the real estate, the single-family home, the backyard came, along with it, came in an in-ground, and we don't see it very often, but it's an in-ground trampoline. Now, this in-ground trampoline is within, or very next to, the 60-foot easement that belongs to ComEd, which goes back to paragraph 15, which is, if it interferes with its use and enjoyment. Clearly, it has interfered with the use and enjoyment. They have pine trees, and not small pine trees. These are the, I'm not sure what they're called, bluegrass pine trees. I think that's an issue now, because I think, you know, that would go to, we're early on in this case, that would go to damages and things that have to be flushed out later. Yes, sir. But, you know, you say it interferes with the use and enjoyment, but you leave out the word current, and I know your opponent's going to come up and talk about the word current. Right. Is that a temporal word? I mean, is that current in time, current like when they sign the contract or when they do the closing? What does current mean to you? How do you define current in this context? Well, Your Honor, the reality is I've, I'm going to start off by saying that I've done research, and I could not find anywhere, any case law that defines this particular phrase, current use and enjoyment of property. I don't know whether it's referring to current as in then current timelines, or as in current as in the type of use that you're currently using it for, which is residential in nature. Now, obviously, I'm going to argue to Your Honors that if you're referring to current as in your current use of the property, which was then. Which is why your brief said residential use of the property. Exactly. It's current use of the property. Exactly, which continues to be the current use of the property. It's residential in nature. I'll make an example, which I'm not sure I, I referenced an example in my brief. But assuming that they had purchased a vacant lot, and the vacant lot, and I know this wasn't a vacant lot, but it was zoned for agricultural, and then they decided to zone it for residential use. Well, it was, it's intended use was agricultural. Now you can't, you zone it something else, power lines come up, you can't argue it's the same use that it was back then. Which is why my current, that I'm arguing to Your Honors, is the type of use, residential. It continues to maintain residential. It was residential back then, and it still is. Now, briefly, on paragraph 12, because that was the trial court's initial ruling in the 615 motion, was that the only avenue that my clients had Justin and Jamie to try and get out of the contract was if section 12, or paragraph 12 rather, applied. In other words, had they found something within the five-day attorney review period, then they could have done something. Could they have seen the title search in the five-day period? Your Honor, the reality is, could they have? My understanding is no. There are about 100 years' worth of real estate, residential, and commercial real estate practice in my firm. I've spoken to all the attorneys. They said that it is rare, if ever, to get title commitment in the first five days. Title commitment is received on the day of closing, the day before closing, or within a matter of a few days. Never, at least from my research, has there been a situation where title is received within the first five-day period. It's never happened. It's very uncommon. Well, because no one wants to pay for the title commitment report when the deal may be nixed for no reason, really. That's correct. And title commitment, if you look at the real estate contract, it's up to the seller to get the title commitment, as well as the survey. Excuse me, the survey. But the title commitment is never, based on my research, within the first five-day attorney review period, which that's why, as I argued at the lower court and I'm arguing now, Paragraph 12 is and continues to be inapplicable to these facts and circumstances because we're not arguing about the terms of the contract. My understanding in reading Paragraph 12, which, again, I could not find any case law on interpreting Paragraph 12, is that it's referring to the terms, i.e., any mortgage contingencies, any sales contingencies the buyers may have. For example, if they entered it to, Justin and Jamie had entered it to the contract and they had to sell a home first, but they forgot, the real estate agent or Justin and Jamie forgot to include check-off, oh, by the way, don't forget there's a sale contingency. We must sell our home before we can buy your home. Then those are the terms we're talking about. What occurred here with reference to the title is not part of the terms that an attorney would normally address during the first five-day review period, and, therefore, that is why I believe that Paragraph 12 is inapplicable. As I'm sure you've read in my brief, I basically stated that had the defendants viewed the paragraph in Schedule B, which outlined the 60-foot easement by ComEd, and informed my clients of that 60-foot easement, I believe that my clients at a minimum had or at least had three options available to them to try and not proceed with the sale or purchase of the residential home. We've talked about two of them. One of them is Paragraph 15 and then also Paragraph 16, as your honors have mentioned. The other option that I believe they had available to them was simply walking away. Now, I do understand that the argument on the other side of the table is, well, wait a minute, it's not that simple, because if you walk away, guess what? Under Paragraph 18, performance of the real estate contract, sellers have a right to come against you for any equitable remedies, i.e., specific performance. However, we don't know whether or not the sellers would have proceeded with a specific performance claim. It's not guaranteed. Furthermore, if you look at case law, specific performance is not a matter of right. However, it's left with the trial court's discretion based on the facts and circumstances of that specific case. So it is not something that was guaranteed. For all we know, keeping in mind when this occurred back in 2003, this was in the middle of probably the hottest real estate market we had seen in generations. The sellers may have been content, and I know it could potentially be construed as speculation. Sellers could have been content with taking the $5,000 earnest money. They could possibly have found new buyers because it was a hot market. Again, isn't that a damage issue that the trial factors are going to have to sort out? It is a damage issue, but the reason I bring it up, though, is because the walking away is a portion. It was an option that my clients had at the time. And these three options, I know the bell rings. You could have the diminution of value and reduce the purchase price as well. Correct. Put it down there. Yes. Yes. And, you know, so as I mentioned, the bell rings, so I'm going to try and finish right up here. But the bottom line is there's absolutely no question. I don't think it's been disputed by defendants at any point is that the defendants in this case did not review Schedule B of the document. They therefore did not inform Justin and Jamie of the 60-foot easement. As a consequence, they could not inform Justin and Jamie of their options, whether it's paragraph 15, 16, or even walking away. The defense took all these options away from Justin and Jamie. We don't know what would have happened because those options were taken away from them. And, you know, at a minimum, they could have attempted to try and negotiate the price with the sellers. Thank you. Thank you. Mr. Shelton. Good afternoon, Your Honors. Tim Shelton for the defendants, Hal Steinspring and Hal Steinspring and Associates. I face the court, counsel. We've heard a lot about a lot of information outside of this complaint, but this is obviously we're on the pleading stage. And whether this complaint can stay the cause of action as a matter of law is the question for the court. And again, I think your brief makes it clear that it's a 615. It is a 615, yes. There's a question in the contract. We didn't do what we did, exactly what counsel said. I think the 619 was a confusion in the trial court based on the earlier ruling, which is not, of course, binding on the court. It's an interlocutory ruling. But so I think it is a 615. It does incorporate the contract, as you said. And so the contract is part of the pleadings. It also rules, governs the pleadings. It has more emphasis. So the terms of the contract are the important thing. And the terms can be interpreted as a matter of law. And so, I mean, for purposes of 615 only, I mean, there's no contest, at least right now as it relates to the pleadings, as to the attorney-client relationship. The allegation that the defendant did not, the defendant law firm did not inform the plaintiffs of the easement. And that the easement, in fact, reduced the property value. And those three things are in the pleading. And there's no affirmative matter, of course. So based on the pleading, we're not concerned with those things. We're concerned with the proximate cause of damages. Is that what we're looking at here? What are the issues that we're looking at? Yes, I agree. The appraisal report reducing the property value is something I'd like to discuss slightly separate from the damages part. But we also have a breach of duty claimed. And based on the words in paragraph 15 and 16. My hand is spinning a little bit because something was said right at the end that I think I should address first. Which was that under 12, he said there's no way we could have, this is not about modifying the terms. Paragraph 12 actually says modifications to this contract. These terms, the terms in 15 could have been modified had counsel been hired, any counsel, within those five days. So that they didn't say exactly what they said. Which might arguably have led to the possibility of voiding the contractor walking away from it. So are you submitting that the duty didn't extend beyond those five days? The duties of this lawyer didn't extend beyond those five days? No, I'm not saying that. No, I'm not. So as counsel pointed out, five days, within the first five days. And I think probably, I think Justice Brooks said you're not going to get anything from the title company within the first five days. So I mean, I think that the court relied on this paragraph 12. And I would submit to you or question you, how is it proper when there's no way they could have had the title search within the first five days? I don't think the court relied really on paragraph 15. It did, it relied on 12 the first time around. The second time dismissed the amended complaint on paragraph 15 and how it interacts with 16. I think 12 is only important in that it would have been possible, water under the bridge, but to have modified that section in such a way that to preserve the right to step out of the contract depending upon what the title search showed. In other words, instead of saying easements that do not interfere with the current use and enjoyment of the property, they could have said easements that will not interfere with the enjoyment and use of this property sometime in the future as real estate, as residential real estate to be determined by the plaintiffs, by this buyer can have some say in this. There could have been some terms negotiated that would have allowed them then to turn to paragraph 16. But that being said, that wasn't done because he didn't come into it after the five days. So that, as you said, is water under the bridge. Water under the bridge. Now what? Okay, now we're there. Now, assuming what could defendants have done at the closing? They could have. No, what could your client have done for the defendants at the closing? I think that's the question. But we are the defendants, so what we could have done for the plaintiffs. Exactly, I'm sorry. Yes. What your client could have done. Yes, they could have. They could not have advised them about any right to go into the contract because they had no such right. That would have been advising them about nonexistent rights. The terms of the contract say that the common utility easement is a permitted exception. So if we assume that, then they couldn't have done that. What they could have done is say there is an easement. The next thing I think they could have advised is if you walk away from this contract because of the easement, you will face the consequences stated in paragraph 18. Lawsuit, payment of the difference between contract price and market value, attorney's fees, costs, forfeiture of your earnest money. What else? I think that's all they could have advised them is you have these options. You can walk away and suffer these likely consequences because they had to advise them that you would be in breach of this contract. You would be in default. Could they have attempted to negotiate the contract? There is nothing in the contract that allows for that. I think this is the first time I've ever heard this suggestion today is that they were deprived of an opportunity, the plaintiffs, to renegotiate the purchase price. Was it that lawyers did? Very possibly. It has not been pleaded. It's not a part of the contract. And this is why I wanted to say the trial court actually did decide on the basis of paragraph 15 because he very aptly said, the judge, I thought, the plaintiffs are there with the easement, whether defendants tell them about it or not. The easement is there and it is a permitted exception. What does one hire an attorney for foreclosing? To review the documents and to make sure the amounts that are stated in the closing papers are accurate. As far as I know, I mean, I suppose they have an affirmative duty to point out things that are in the closing that are stated, like in the title search. But had they done so, where do we get, and this will go on now, Justice Burke, to the question of the damages. How may it possibly cause damages? You argued earlier that you're saying that there was no duty. But from listening to you now, it appears to me that you're saying that there perhaps was a duty to inform of this easement, but that there's no proximate cause. Yes, that's right. But for the failure, there's nothing that would have changed in this deal. I mean, that's what your argument is. Yes, there's nothing, but it's exactly. And part of that argument, that argument then goes off into two paths. One is you're saying that 15 doesn't apply because this was a permitted exception. Now, of course, the other side disagrees and says that this interfered with the current use, and we can talk about that in a second. Of course, the other path then is let's assume it was a permitted use. The plaintiffs might have had the option then just to simply walk away. And then we're talking about all those things that could have happened to them, specific performance, whatever other damages, if the sellers decided to file a lawsuit. But my question regarding that path is isn't that a damage issue? Isn't that something that the trial of fact needs to sort out, whether or not there are actually damages there? If they decided to walk away, let's assume for a minute that this was a permitted exception. But, you know, the argument is but for them not being advised of this, they could have at the very minimum just walked away and lost their earnest money. They would have lost their earnest money. They may have had to pay for attorney's fees. I mean, the worst thing that would have happened would be specific performance plus attorney's fees. Then they'd be, of course, worse off. But isn't all that stuff I'm just talking about now, isn't that a question of fact? How does the judge on the 615 motion jump into all that stuff about damages? Well, you have to plead damages and you have to plead non-speculative damages. And my understanding of the law and legal malpractice is damages have to be actual. It is what you would incur, what you have incurred, how you are damaged, what you've suffered as a result of the attorney's conduct. In this case, in the transaction as opposed to in the trial litigation. Even though they say there's a $125,000 decrease in the value of poverty due to the easement, that has not occurred. We don't have any damage. We don't have a damage until they go to sell the property. So they have to wait until they go to sell the property and then sue the lawyer for malpractice? They have to have, for their cause of action to improve, they have to have all elements in place. They have to have actual damages. My worry here is, and this is maybe a larger view, but you have a malpractice action, you win, you get a nice award, and you never sell the property. You never realize any damages. You decide to stay and it's a two-acre property. I didn't know that until today. It's two acres. There's some poles there. There's a house there. They are living there now. Maybe they decided to stay in the house and use this money to travel. Otherwise, you just open the door and have lawsuits all the time and get awards and never get any damage. It happens all the time. People get money from the insurance companies to fix their cars and they don't fix them. They go in there with a dent in their bumper and they put the money in the door. That's the difference between an insurance company and a professional lawyer. Again, you're looking at the bigger picture. I'm trying to focus in on this lawsuit and whether a 615 motion is appropriate. Yeah. I do think it comes down to, and I think that this is not yet a jury question about damages. This is a matter of law that the court can decide whether damages need to be pleaded in specific, non-speculative damages pleaded so that they could be ultimately proved. And damages under the law of malpractice are damages that have occurred. The result that would be obtained would have been obtained. Well, let's argue it this way, counsel. At the day that they purchased this home at the closing, had they known about this 60-foot easement, their purchase price may have been $125,000 less. They have suffered the damage. They have less $125,000 in their pocket. Had the attorney represented to them that there was an easement on that day? Well, it's speculative that they would have had that damage or that boom, whether they would have been able to reduce the price by $125,000. All we know is that by their own pleading that were they to now sell the property, they would be damaged $125,000. But they would also – that is the amount they would have been in breach of their own contract before, which is where the attorney comes in. I mean, the attorney isn't a soothsayer. He doesn't know. He's just saying, I came into this situation. Here's what you agreed to. Here's what you agreed to. Therefore, I don't have to look at any of the documents. I'm just here to say this is what they agreed to. So what was his job on that date? Again, I think I've asked you this before. What was the job of a lawyer at the closing? Well, I imagine it varies a great deal at closings, but I would assume it's to make sure the papers are in order. I'm not sure it's much more than that. In my own situation of selling – buying a house, selling and buying, I had an attorney who looked over the corner while it was being – we were signing papers and said, there's a zero missing. And we all went, oh, my God. And we got changed. It was in our favor. It saved us $1,000 or something. That I would see. I don't want to skirt around. I believe they probably should look at the closing – the title documents and say, you know, there is an easement on this property. You're buying it with an easement. It's not currently being used. It has not been used for 28 years. Conrad had that since 1975. And, in fact, it wasn't used for another three years. The current use and enjoyment of that property was free of any problem of any actual operating use of the easement. But it did exist. And in the best of all worlds, I think the attorney would say, there is this easement that's been there for 28 years, and it might – they might decide to use it at some point. Is current at the time of the signing of the contract? Is current at the time of the closing? Is current, as counsel argues, not time at all. It's how it's being used at this moment. Actually, how the property is being used at this moment, not necessarily the current use. I did research also current use and enjoyment and found one case, 1924, which uses it as a term of art for linking an easement to the land. In other words, it passes from purchaser to purchaser if it involves the land. And that has to relate to the current use and enjoyment in some way.  So I believe that language probably originates as some sort of way of saying we intend to coexist with the residential use. So it's currently linked to the property? Yeah. Yeah, we're currently linked to this property as it goes – passes from – From the purchaser? Yeah, on down the line. That is outside of pleadings, too. Otherwise, looking literally at the language, yes, current is now. And arguably, it doesn't interfere with the residential use of the property. Enjoyment may be different. But as far as the pleadings suggest, they are still in the house and they've got a two-acre property. There's a utility poles in the property and some trees are gone. I think the founders, the people who wrote that language would say that that coexists, that we are not interfering with the current use. So that's – I think that they have to look at the – that's figured. The literal language says current use. And that's what the trial court relied on very clearly. They said you are there with this easement no matter what defendants did or didn't do at closing. You have – you've baggaged yourself with this easement by signing these papers and agreeing to these terms, these very clear terms. Maybe current is open to some interpretation. I maintain it or suggest it is not because it's – we've used the dictionary definition in our brief. But it really is what is going on right now. Counsel, if you'd take a minute to sum up, please. Sure. I believe that the terms of this contract are very binding and are clear. They can be interpreted by a court, this court, and they were interpreted by a trial court, excuse me, as a matter of law. And they do not show that even if there was a breach of duty, there were no damages established by – can be pled that are non-speculative. Any damages we suggest would be speculative. For all we know, the commune could decide to put another easement in lock of the money, a request to try to buy – you know, it could be rezoned. The zoning seems to have shifted already back into – We're getting very speculative, aren't we? Yes, and then I'm getting speculative. But that's my point, because it's speculative to also say that if we sold this property, it would be a loss of $125. We don't know that. We just don't know that. Counsel, thank you. Thank you very much. Mr. Escovedo. Hello once again, Your Honors. During the trial court level, the argument has always been from the defense that there was no duty. And I think even now it's hard – they're hard pressed to say that there was a duty. My – I've never understood how, because the defendants were not retained within the first five-day period, how they take a position that there was no duty owed. Even until now, I don't understand. Then, as Your Honor pointed out, what was the purpose of being hired? We've made it clear that the purpose of my clients hiring the defendants when they did was specifically to go with them to the closing and review the closing documents because they were not familiar with those documents. That was exactly why they were hired. Defendants knew that's why they were hired, and he knew what his duties were, and he breached those duties. Now, in terms – Your Honor has asked both myself and counsel for defense whether this is a 615, 619 motion, and having reviewed my notes a little further, it appears to me that this is a 615. If you look at my response on the amendment complaint when they filed their second motion to dismiss, I think my footnote number one states that I had contacted the attorney for defendants when I was writing my response to their motion to dismiss and asked them, what are you going on? And he said, I'm going on the trial court's previous ruling under 615. I think that's what he said here, too. Oh, is it? Okay. So on the 615, it's my understanding that we must set forth legally recognized cause of action, which we have. It's a legal malpractice cause of action, and plead the facts, bringing the claim within the cause of action. I believe we've met each one of those elements. The relationship that existed, there was some communication between both parties. They both agreed on what the intent of that relation was going to be, how he was going to represent them. They agreed on consideration. He was paid for consideration, and he breached the duty that he had. Damages, I agree with Your Honor that damages may be a little bit premature at this point, but if we're referring to 615 and we have to plead to every element of the legal malpractice cause of action, a damages that is not speculative, even how diminutive it may be, those trees were cut down. They had some monetary value to them. Furthermore, in terms of damages, as I've argued in my brief, we did hire an expert, a certified residential appraiser, to come and review and analyze what the value of the property was. The decrease stayed the same what it was. So I think we have met every element of that cause of action. Again, the fact that the defendant was not hired within the five-day attorney review period, which I still argue to be inapplicable, paragraph 12, does not preclude him of his duties at the closing. He did not review the document, Schedule B, which unquestionably, for my research, the title commitment is received at or very close to closing, not within the first five-day attorney review period. It is a very critical document. It is a document that tells you as the purchaser, listen, you are taking a title to this property subject to this. And there were some other easements, five-foot easement, ten-foot easement, utility easements, very common in all properties. You obviously need them for people to get in and out of your property if you're looking utility-wise. This was not a common easement. This is unusual, 60 feet. What they could have done had he informed them, besides what we've already spoken about and informed them of their options, another possibility was investigate this, total the closing, continue it for another day, and have my client, give my client the opportunity to contact, comment, and investigate what are your plans with this easement. However, that option and all the other options that I previously argued were not available to my clients. We believe, again, as a direct result of defendant's negligence, my clients had some opportunities taken from them. Some of these opportunities or options were options that they could have used to try and not proceed with the closing. Thank you, members. I want to thank both counsel for their arguments here today. The case will be taken under advisory.